Next case on today's docket is in the matter of the estate of Gilbert Rutman deceased and we have Mr. George Morifian for the appellant and we have John McCracken for the accolade. You may begin when you're prepared to Mr. Morifian. Thank you your honor. May it please the court. To our knowledge this is a case of first impression in Illinois. Our research has produced no case in which the clear and unambiguous intentions of a testator are frustrated by a trial court's exercise of its inherent power to protect minors. As we will demonstrate the trial court to invoke its equitable powers in the absence of a justiciable matter relative to the interest of the minor. In the time I have I would like to focus on two aspects of what happened in the court below because this case has significance in how when it becomes an interpretation of a will that becomes clear on its face and when a court even recognizes that it might be rewriting the deceased's will by making a change. Let me first address the question of standard of review because I'm sure that's on your minds. We maintain that the standard of review in this case is a denotable review and the basis for that assertion is the fact that this is a question interpreting section six of the decedent's will. That section of the will gave the executrix the power to distribute the funds for the benefit of minor beneficiaries to a parent or an adult relative in trust. So the will is clear. The power is given to the executrix. That is a question of law of interpretation if the court chooses to interpret that section in another manner. As we will explain the order of the trial court originally granted the executrix leave to create irrevocable trust pursuant to this section six of the decedent's will. Following the motion and the hearing on that order, the trial court recited from the bench that in short wills like this where the decedent gives the executrix broad powers, it's doing so with the intent that the executrix in this case carry out the intentions that are set forth in the instrument. We should also point out your honors that it's not merely section six that is of import here but section five of the will also gives the executrix powers without approval of the court to create such instruments that are necessary and convenient in carrying out the other powers that are given to the executrix. So what happened in this case? The executrix is petitioning the court for leave to create irrevocable trust for the benefit of the minors. Who is the executrix and why is she doing so? The executrix is the niece of the decedent and by virtue of that relationship she is a relative of the decedent and pursuant to section six. She's asking the court to give her power to create the trust that the instrument allows her to do. She names herself and the minor beneficiaries own as co-trustees because he is a relative of the minors. The court after hearing grants the order. Then the beneficiaries file a motion for reconsideration at which time a guardian ad litem has been appointed and the guardian ad litem files his report and recommendation kind of splitting the metaphorical baby so to speak in which the guardian suggests that the parent would not be an appropriate recipient of the funds to administer for the benefit of the minors but that the main trustees also would not be and incited to family discourse or the hearing the trial court was specifically posed with the question of what to do about the suggestion that a bank be appointed. When you say hearing were there any witnesses presented who were placed under oath and testimony was taken? No it was just an argument of counsel. So what evidence is there in this record? There's arguments of counsel in the record but what evidence is in the record? The only other evidence in the record would be the pleadings as well as the report and recommendation of the guardian ad litem. The pleadings wouldn't be evidence. Right. But the guardian ad litem's report was marked or maybe not this formality as an exhibit and admitted or do both of you agree that that was as if they had testified? Yes. Okay. Well I'll ask them I guess but I'm trying to figure out from this what actually was in evidence in this case that the court could rely on in making a decision. Well I don't recall if the guardian ad litem specifically moved for admission of his report into the record I mean there's a transcript. If you both agree on it then that's fine. That it was argued the report. So the court then in reliance upon the report and recommendation of the guardian ad litem vacated the order granting leave to create irrevocable trust and further directed the council to formulate a degree order with respect to the transfer of funds to a corporate trustee located in Madison County, Illinois. So that's basically what gave rise to this appeal. Now we started out today by stating what we believe is a general principle and that is a law that comes into collusion with another principle of law. In the brief we refer to it as coming at crossroads. The first principle of course is the inherent equitable power of the court to exercise its powers for the protection of a minor and that collides with the power of a testator to make a will that is clear and ambiguous and to have a court interpret it. I think the the overwhelming message that this court may be sending in its decision is to what extent are we going to allow a trial court to substitute its will and judgment for the clear and unambiguous will of the testator. Now there could be some valid reasons why the court and in the exercise of its plenary powers can make a a substitution for the benefit of minors but in doing so the court has to have found that there is some interest in controversy. We cited to the Chicago case in our brief. That's really an important case in your eyes. There are really two important cases that we want to emphasize in our time here today. The other one is the estate of Wausau. But in the Chicago case, the school district, the court said that yes we recognize that a trial court has these inherent fiduciary duties. I mean that the court has inherent equitable powers to fashion a result for the benefit of a minor. But the court went on to say that there has to be a justiciable matter before the court before the court is going to take up the issue. The court is not the protector of the war in all instances. There has to be something before the court. In this case there was no controversy between the fiduciary and the one-fourth of the estate and their uncle gets the other one half. So the the only question was one of as raised on the motion for reconsideration whether it's appropriate for the the executor to exercise the power given to her under section six of the will. When you look at the facts that that existed you see that the there was no evidence or no argument to the effect that either the executor executrix or the uncle were not capable of carrying out their duties. And in fact that's the principle that this court almost 20 years ago announced in the estate of of the selection of a trustee. Now that court that piece is is different on its facts because it came to chanson by virtue of the fact that there was no trustee of a trust a living trust. There was not a testamentary trust to my recollection and there was no guidance from the testator in order to guide the court with respect to whom the court might consider as a trustee. And that's different than in this case because in this case the testator gave that guidance. The testator gave the guidance in section six because he said I give my executor the power to distribute the assets to a relative interest for the benefit of the benefit of the minor granddaughters. So what we're what we're faced with here is this court the trial court below saying I'm going to exercise my inherent equitable power and I'm going to because I'm in the best position to determine what's in the best interest of these minors and in so doing I'm going to vacate that order in which I allowed the the executive to create irrevocable trust and I'm further going to direct that the assets be turned over to a corporate fiduciary in Madison County. That's rewriting the decedent's will. And there has to be a very very high standard that the court is going to apply when it is going to a testator will never go to his grave knowing whether or not his intention is going to be carried out if a court isn't held to a very high standard in departing from the the words that the testator wrote. And so in this case the trial court gives a supplemental order and tells why he believes that it is in the interest of the the minor beneficiaries and he cites to two treatises. The first one CJS is really not relevant because the quoted material really deals with the person of the minor and not in and really not the the property of the minor. The second treatise Illinois Law and Practice section 66 is quoted by the court to talk about these inherent plenary powers and that the court has the absolute power to fashion a result that is in the best interest of the minor. But what did the court do? The court says that the courts have not only an inherent plenary power to protect the interests of the minors but also have a duty and a broad discretion to do so. But what the court omitted was the last sentence in that paragraph which stated that in exercising that power there has to be a justiciable issue before the court. You can't just exercise this power. So the omitted last sentence of the quote that the trial court relied upon makes a 180 degree difference in how one looks at the conclusion drawn based upon existing authority. Now we talked about the Watson case a little bit earlier and let me let me come back to it because I want to try to tie the loop between the the city of Chicago versus the board of education and its definition of limitations on the inherent equitable powers of the the trial court with the ability of the court to fashion a result. Now let's suppose the testator just as an example nominated his banker as the fiduciary as a as a testamentary trustee under the will. That was done in 1992 when the testator wrote his will. And let's suppose that in 2005 that same banker is convicted of bank fraud. Well we would suspect that the beneficiaries would come forth and say this person is not suitable to serve as trustee. He's a convicted felon and the court would probably have no difficulty in saying I'm going to exercise my power and I'm not going to appoint the allow the the name testamentary trustee to serve because he's not a good moral character. So there's been a presentation made by the beneficiary and a ruling by the court based upon facts going to the Watson said look if if you're going to raise issue with respect to who is selected as the trustee in this case there was a question of whether it was going to be a corporate fiduciary or an individual fiduciary. And the court says you haven't presented any evidence here that says that this function is named under the instrument. And so that's why Watson is important because it's telling us that really there are some limitations that the courts have to exercise in in applying the equitable power that is granted to it. It is not boundless. The language in that Chicago case is really important because the court is really is saying that yes we recognize that trial courts have these inherent powers but you know they have to exercise them in a in a sound and reasonable basis and that there has to be a basis in fact for the courts to exercise that power. The decedent nominated Meryl Manning as the executrix in 1992. Some 17 years later in 2000 or 15 years later in 2007 he now names her as the successor trustee of his trust. Now 15 years have passed and Meryl still enjoys the trust and the confidence of the testator when he goes as the settlor of his trust to name her as the successor trustee. He could have named a corporate trustee but he didn't. He could have named his son as trustee and as we see he did in the first amendment to his trust. I didn't get into the facts as you'll see in the discussion of the facts the testator had two sons. One pre-deceased him and that's what gave rise to the will passing prosterpies to his minor descendants, twin daughters. And so from the time his son's death to the time of the amendment the settlor felt the need to further protect the interest of his minor granddaughters and named his son, his other living son, as the trustee for their benefit. This is a close family and it is clear in the relationships here that the trustee wanted family to be there to protect the interest of the minor granddaughters in serving in fiduciary capacities. Thank you. You'll be allowed a time for rebuttal. Good afternoon. May it please the court. My name is John McCracken and I represent Nicole and Caitlin Rutman who are the two granddaughters of the deceased Gilbert Rutman. Before we begin I'd like to address the question of the guardian ad litem report. Even though it wasn't formally admitted into evidence it was filed as part of the court proceedings and I think everyone has acted as if it was truly an evidentiary document. Is there any other evidence in the record? Any other testimony, any other thing that we could consider as evidence other than the lawyer's arguments? Other than the pleadings and the affidavits. When you say affidavits are you saying they were in evidence? The affidavits were filed with the pleadings in this case. Well that doesn't make them evidence does it? I agree it does not. Okay so we're limited to the guardian ad litems report on what the court could rely on in making his decision and the will itself. And the will itself. Okay. When the notice of appeal was originally filed in this case we filed a motion to dismiss arguing that the executor was not aggrieved or harmed by the court's order. That motion was denied. But what we'd ask the court to do after hearing the arguments and after reading the briefs is to include in its final analysis whether or not the executor is actually aggrieved by the court's order and has standing. In this appeal the executor has tried to present this case as a interpretation case. And it's not. We all know exactly what the will says. The executor's brief states that the trial court failed to follow the clear and unambiguous language of the will. Now this appeal does not arise from the executor filing a petition asking the court to interpret an ambiguous provision. In fact the first time we hear about any ambiguity in the will is when an appeal is filed and we have to give consideration to the standard of review. What we have in this case is the trial court recognizing what the will clearly says and then realizing that we have minor children involved. The court used its inherent plenary powers to protect those minor children and ordered how the terms of the will are to be carried out. The court's plenary power to protect the minor is not boundless. There are limits and what we are here today to determine is did the trial court abuse its discretion. Now to be clear our primary position in this case has been that the grandchildren's funds should be distributed to their parents pursuant to the Uniform Transfer to Minors Act. And if this court does determine that a de novo review is appropriate, we ask then that the court order the one thing that is most clearly and specifically stated in the will and that is that the distribution be made to a parent pursuant to the Uniform Transfer to Minors Act. For the court to determine if there was an abuse of discretion, we can look to the Wasson case which was referenced earlier. And in the Wasson case there were three factors to be identified for evaluating who should be a trustee. A successor trustee. In that case it was a successor trustee. And they were the intention of the creator of the trust. So when we look at the first factor, the intention of the creator of the trust, that's an interesting factor in this case because the person creating the trust is not the decedent. The person creating the trust here is the executor herself. She is the one who is creating these trust documents. It is the executor herself who has come up with the idea of drafting these trusts and naming herself and the uncle as the co-trustees. It is not the decedent who has laid out these trusts in his will. If we want to look to what the decedent actually intended, what his intentions are, we have to look to the will. And when we look to the will, it says the distribution is to be made to a parent or adult relative. Now if we're to focus on that, what did he mean by parent or adult relative? Because a parent is an adult relative. He would not have had to specifically call out a parent. He could have just said an adult relative. But he's specific. He says to a parent or adult relative. There's only two people, these grandchildren are twins, there's only two people who can be parents. So that reference to parent is very specific. An adult relative could be numerous people. But the decedent said a parent or adult relative and he said parent first. Parent came first. The other clear intention in the decedent's will is that half of this estate go to those two grandchildren. The trial court's order does not do anything to change that percentage. The court's not rewriting the will. What the court is doing is changing the vehicle through which that money is received by those children. When we look at the interest and wishes of the beneficiaries, we see that because we're dealing with minor children, the court appointed the guardian ad litem to advise the court as to what would be in their best interest. The guardian ad litem report explains that he reviewed the court filings, he reviewed the will, he interviewed both the executor and the grandchildren's parent, and he reported to the court that the two co-trustees suggested by the executor were not in the best position to serve as the trustees. Instead, the guardian ad litem recommended that it was the best interest of the granddaughters that their share of the estate be distributed to a financial institution located in Madison County to be the trustee. Let me ask you this. Mr. Emmons is the guardian ad litem? Cliff Emmons. Emmons, I apologize. In the transcript I've got here, this is the guardian ad litem. Your Honor, first of all, I am not in any way suggesting that any of the three individuals, my client's mother, who was suggested, you know, the custodian, R. Mannon, or Michael Rutman, I'm not suggesting that any of those persons are not capable of handling their function as custodian and or trustee. Nobody is a bad person here, and I'm not suggesting that. Now, it appears to me from his report and what he said that these people aren't crooked or they're going to, they're not capable investing the miners' money. It's just that the trustee and the miners don't get along. Now, wouldn't the court need more than just a disagreement as to personalities in effect changing what the executor has in his will? Well, the court did look beyond just the personalities. I think the court looked to, they looked to the recommendation of the guardian ad litem. Can I ask you this before we go? Is there anything in the record that these two, the executor, R, their uncle, was not capable of serving as trustee? I do not believe there's anything in the record that says they are incapable of serving as trustee. But what the court was looking for was what would be in the best interest of these children? The court. And that best interest of the children would overcome what the executor had chosen. If he had chosen his son, specifically said, I want my son to be the executor of my grandchildren. And the court, down the road, after he was dead, decided, well, I think it's in their best interest that somebody else be the executor. Would the court have that, I mean, trustee, would the court have that kind of discretion? In dealing with the miners' estate, yes. They would have that discretion. And that's what happened in this case. The court saw they were dealing with minor children. And the court exercised its plenary power to look out for the interests of the minor children. And named the corporate trustee, or a third-party trustee. What are the interests of the minor children that are being affected that the court identified? The court, I don't think, made any findings of fact as to what those interests are. What the court did is it relied upon the guardian ad litem's report. Regarding the animosity and distrust between the proposed co-trustees and the parents of the minor children. Okay, you said distrust. There's nothing in the record that you would distrust these two people from acting as trustees. I believe there is. The guardian ad litem report explains the distrust that the parent has with the proposed trustees. What do you mean by distrust? The concern that they will not be acting in the best interest of the children if they are the trustees. Isn't that in contradiction to what you said that they're capable of carrying out their duties? No, it is not in contradiction. Just because they are capable does not mean that they would act in the best interest of the children. That does not mean that they are the most appropriate people to serve as co-trustees. The question was, are they capable of doing this? But that doesn't mean they're the best people to do this. And what the court did, it saw, I think the court saw that they probably could not have picked, you know, someone more adversarial to be the co-trustee. And that's because the mother and the uncle and the executor don't get along. Correct. That's fairly common after a divorce, wouldn't you think? I don't know. I think in this instance that that may have been the case. I think there's evidence in the report to suggest that following the divorce that was the case. And I think that that leads to the court recognizing that. The court did not have to have a finding as to the truth or falsity of what were these affidavits in the petitions regarding the distrust and animosity. They're not in the record. They're not in our record affidavits. We're not considering them, are we? Well, but not to the truth or falsity, but the fact that they exist in the allegations being made. The court said that he wasn't going to, you know, find for the truth or falsity of the allegations in the affidavits. But the court could not ignore the fact that those allegations were there and were being made and were reflected further in the guardian litem's report regarding all the animosity and distrust between these people. What the court saw, I presume, is that if he were to go forward and name these two as the co-trustees, because of the litigation that has been going on in this estate, it foreshadows the other issues that would come up if these two were to be named as the co-trustees. Are you asking us to affirm the trial court's order or in effect to reverse him and give the money to the mother to act as trustee? My primary request is that you reverse the order under a, if you look at a de novo standard of review, and under the terms of the trust, give it to the parent under the Uniform Transfer to Minors Act. Now, if we're going to use... I don't mean to be picky, but you want us to use a de novo standard in reviewing it to give it to your client, but in abuse of discretion on the other? I believe the abuse of discretion standard is the most appropriate, because this is not a will interpretation. But if the court does adopt a de novo standard, then I think the terms of the will are most clear. What you find in the will is parent, Uniform Transfer to Minors Act. Because if you adopt a de novo standard, you're taking it as a will interpretation case. And then we have the word, there's the word trustee used in the phraseology. And we would look at that and say that's being used as a general term as a fiduciary, because it's been followed by a parenthetical or custodian under the Uniform Transfer to Minors Act. So the word trustee, if we're going to interpret this, we don't feel that opens up the right for the executor to suddenly draft these two trusts for these children and name them these co-trustees. The will doesn't specifically give her that authority. It's simply by the use of the word trustee that the executor has extrapolated to suggest that she has these powers. And what we would suggest is the use of the word trustee is simply used to reference a fiduciary. And then the specific reference you find in the will is as a custodian or under Uniform Transfer to Minors Act. So that's how we see the language in the if there were to be a de novo standard of review. After considering all the factors, what the court ruled was it would be in the best interest of these children to have the corporate trustee appointed. Now, the executor argues it was wrong for the court to invoke its equitable powers because it says there's no minor interest in controversy and there's no adversarial proceeding involving a minor's interest. Well, this whole issue arose when the granddaughter's father petitioned to compel a distribution from the estate. Certainly, this is an adversarial proceeding. Certainly, it involves the funds of the minor's children. And certainly, it was proper for the court to invoke its equitable powers to protect the interest of the minors. And let's not lose sight of the fact that the executor, being an executor, owes fiduciary duties. She is a fiduciary. And she owes duties to the grandchildren. She does not have unlimited discretion. She has to uphold her fiduciary duties to the estate beneficiaries and act in the utmost good faith to protect their interests. So I think there was a reference earlier. Well, certainly, if the executors suggested a convicted bank felon being appointed, then the court, and I believe there was the agreement, then the court would, could step in and say, well, that's not appropriate. So I think there's an acknowledgment that there is limits to the executor's discretion in naming these trustees. And what the trial court did is it saw that the executor has discretion. It realized that the exercise of that discretion was not in the best interest of the minor's children. And therefore, considering the Guardian-Lytton report, ordered that the funds be distributed through a corporate trustee. So in conclusion, considering the executors, we'd ask this court to first consider the executor's lack of standing in this case. Her only grievance is that she feels she loses out on the ability to choose who the executor, who the co-trustees are. If this court does adopt a de novo standard of review. The lack of standing, is that in your brief? It was filed. Yes, it was. It was in our brief. It was in our motion to dismiss. And in our brief, we began with... Was it an issue before the trial court? I mean, I didn't see the standing issue you brought up. Well, the standing issue is in regard to, is the executor in a brief party? I know what it is, but I'm just wondering where it was brought up in the trial court or how it was preserved and whether it's in your brief. It is in the brief. It is referenced in the brief at the very... One of the first two paragraphs, I believe, we asked the court to reincorporate the motion to dismiss. You didn't take a cross appeal on that, did you? No, we did not. Okay. So if this court does adopt a de novo standard of review, we ask that the trial court do not abuse its discretion and affirm the trial court's order. Thank you. Thank you, Mr. McPartland. Mr. Mauritian, do you have rebuttal? Do I have five minutes? Thank you. I have a few comments I'd like to make with respect to counsel's argument. First, he made the comment that there's an allegation of an ambiguity of the instrument. Our brief said many times over that there is no ambiguity. Section six of the will is clear and unambiguous. Counsel stated that section six gives the power to give the executrix the power to distribute it to the parent or an adult relative. But I didn't hear him say in his argument that it is as trustee. He left those words out in his argument. The will says the power to the executrix to distribute it to an adult parent or an adult relative as trustee. That's significant. I mean, that's why the executrix petitioned the court for leave to create the instrument. The instrument itself didn't give her guidance. This was an independently administered estate, and the beneficiaries sought that it become a supervised estate. They filed a motion for the estate to be supervised. So under those circumstances, the executrix wasn't about to for which says in each case to be exercised without order of court. The will says that. But notwithstanding that provision in the will, the executrix is saying, look, I want the court to give me leave to create these instruments because the will itself didn't give me guidance as trustee as to how to administer the funds. So the executrix came forward long in the spirit of transparency and said, look, this is what I'm asking the court to give me authority to do. Here's a draft trust. We want the court to consider this as the instrument under which the fiduciaries are going to operate. And it set forth, I mean, it's a complete instrument, the draft for each child. There were there were mirror instruments. And the court was hearing in January of 2010 when the court recited from the bench that it is going to grant the motion. We had an extensive argument in the courtroom, and it probably lasted over an hour. And at that time, the court considered the merits of it. And the court realized that the trustee, that the executrix in distributing the funds to herself and the uncle as trustee needed some guidance. And so it was it was reasonable for the court to accept the motion that she came forward with to ask the court to appoint as trustee. Now, counsel said that the trial court was not rewriting the will, but I would direct the court's attention to page 21 and 22 of our brief in which we quoted from the record. The court, well, I'll stop you. It seems to me that I have to look to the intent of the testator. And the one provision which is very broad says that the executor, that he deeded the property over to any minor. The executor who may distribute it to the trustee, the executor may. Now, and I don't know that I would I give it over to, say, a bank. Am I not rewriting the will? Am I not The trial court, when we had this hearing on the motion to reconsider, recognized that this is getting into a gray area, that the court is expressing concern that he's rewriting the decedent's will. I mean, it's there in the record. And so to say that the court's not rewriting the will has to be taken in the context of what the court said from the bench. Now, Judge Donovan asked some questions about what is in the record. In the original brief, we also pointed out that in the record, there was this discussion with respect to the affidavits and counter affidavits that were submitted in support of the pleadings. The trial court specifically stated, I am not going to take the affidavits into account. So the affidavits are not part of the record. In fact, that kind of addresses the situation of, well, if the court is not going to consider the affidavits of the interested parties here, then the report and recommendation that goes to the issue of animosity is really almost hearsay. You didn't object to that during the trial, did you? That it was hearsay and it shouldn't be admitted for that purpose? I don't remember. I don't see it. If you didn't object at this point, and I do remember that from your brief, but I think if there's evidence in the record that was hearsay, it had to be objected to at the trial level to be preserved. That concludes your time. Thank you, both gentlemen, for your briefs and arguments, and we'll take the matter under advisement.